IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**JESUS CORTEZ RIVERA,**
**VIRIDIANA REYES,**

    *Plaintiffs,*

v.                                                              CIVIL ACTION NO.: 3:21-CV-132
                                                                         (GROH)

**ALTEC, INC., et al.,**

    *Defendants.*

## DEFENDANTS' REPLY TO ALL RELIABLE SERVICES' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

Defendants, ALTEC, INC., et al. (collectively "Altec"), by counsel, respectfully submit this Reply to All Reliable Services' Opposition to Defendants Motion to Compel. As explained in greater detail below, All Reliable Services ("ARS") distorts the governing work product standard applicable to "dual purpose" documents, which shields documents from production only where the "driving force" behind their creation is litigation or the impending threat of litigation. Additionally, ARS mischaracterizes both the Root Cause Analysis Report prepared by ARS Safety Department Manager, Benjamin K. Switzer (the "Root Cause Analysis Report") and the Third-Party Expert Report prepared by Gary Werkhoven of Arrowhead Product Development, Inc. (the "Third-Party Expert Report").[1] While the factual causation analyses set

---

[1] It is worth pointing out that ARS repeatedly refers to Mr. Werkhoven's report as the "MacMinn report." ECF No. 128. This designation is misleading insofar as it purports to describe the report as one having been prepared by ARS' general counsel, William MacMinn. Defendants wish to make clear that the Third-Party Expert Report was prepared by Mr. Werkhoven, not Mr. MacMinn. Notwithstanding, there is little support in the record for the proposition that Mr. MacMinn even personally requested the Third-Party Expert Report. Instead, the Root Cause Analysis Report clearly states that "third party assistance with the proper credentials and expertise has bene requested to conduct further investigation of the [bucket truck's] operational safety and reliability." **Exhibit C** at 28. It is very possible that Mr. Werkhoven's consulting services and report were requested by Mr. Switzer, ARS's Safety Department Manager, not Mr. MacMinn.

forth in these reports may have *subsequently* become integral to the formation of ARS' counsel's mental impressions and legal strategies, it cannot be said that the instant litigation—or the impending threat of litigation—was the "driving force" behind the reports' creation at the time they were created. Instead, based upon the record before this Court, and based upon the Root Cause Analysis Report's explicitly stated purpose, it is abundantly clear that the "driving force" behind the creation of these reports was to "prevent future reoccurrence." *See* **Exhibit C** at 6. This Court should, therefore, compel ARS to produce the Root Cause Analysis Report and the Third-Party Expert Report.

## ARGUMENT

Defendants' Motion to Compel is perfectly clear—all of the surrounding circumstances concerning both the Root Cause Analysis Report and the Third-Party Expert Report demonstrate that they were not created "because of" the instant litigation or the threat of impending litigation. Defendants do not, as ARS implies, suggest that the Court view the reports through the lens of "bright line" rules. Rather, the precedent of this District, the Fourth Circuit, and nearly every other federal district court and circuit court of appeals make clear that any entitlement to work product privilege protection is contingent on the document having been "prepared *because of* the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992) (emphasis in original); *Hopper v. Jay-Bee Oil & Gas, Inc.*, Civil Action No.: 5:20CV101 (LEAD), 2022 WL 19075335, at *2 (N.D. W. Va. Oct. 4, 2022) (quoting *Nat'l Union*, 967 F.2d at 984); *Guo Wengui v. Clark Hill, PLC*, 338 F.R.D. 7, 10 (D.D.C. 2021) ("To determine whether a document was 'prepared in anticipation of litigation,' courts in this circuit apply the 'because of' test, asking

'whether, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'").

As explained in *Hopper*, the "because of" test is "'designed to help district courts determine *the driving force behind the preparation of the work product*' and distinguish between that which is created in anticipation of litigation and that which is created in the ordinary course of business." *Hopper*, 2022 WL 19075335, at *2 (quoting *Adair v. EQT Production Co.*, 285 F.R.D. 376, 382 (W.D. Va. 2012)) (emphasis added). The "mere prospect of litigation" is insufficient, and even documents created after the institution of litigation may not be entitled to work product protection. *Id.*

ARS seems to suggest that the Root Cause Analysis Report and the Third-Party Expert Report are "dual purpose" documents that, notwithstanding their explicitly stated purpose, serve litigation purposes warranting work product protection. ECF No. 128 at 9–10. Courts have recognized that certain documents may be classified as "dual purpose" documents, which may be created in the ordinary course of the party's business, as well as for litigation purposes. *See U.S. v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010); *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009); *Hawkinson v. Immigration & Customs Enforcement*, 554 F. Supp. 3d 253, 266 (D. Mass 2021); *Goosby v. Branch Banking & Trust Co.*, 309 F. Supp. 3d 1223, 1233 (S.D. Fla. 2018); *U.S. ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1325 (N.D. Ga. 2015); *see also* Wright & Miller, *Federal Practice & Procedure* § 2024 n.26 (3d ed. 2023).

Courts in the Fourth Circuit have likewise discussed the extent to which "dual purpose" documents are entitled to work product protection, primarily finding that work product protection does not extend to a document if it "would have been created in substantially similar form but for

the prospect of litigation." *See In re Capital One Consumer Data Security Breach Litig.*, MDL No. 1:19md2915, 2020 WL 2731238, at *6 (E.D. Va. May 26, 2020); *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 192–93 (E.D. Va. 2019); *Lewis v. Richland Cnty. Recreation Comm'n*, 2018 WL 4596119, at *5–6 (D.S.C. Sept. 25, 2018) (endorsing the "irrespective of" test for dual purpose documents); *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 747 (E.D. Va. 2007) (explaining that the "irrespective of" formulation is a "useful exposition[] of *National Union*'s 'because of' standard").

A particularly instructive decision out of the United States District Court for the District of Columbia, *Guo Wengui v. Clark Hill, PLC*, found that an investigative report procured by a party's counsel after the threat of litigation arisen was not entitled to work product protection because it would have been prepared irrespective of the prospect of litigation. There, a former Clark Hill employee filed a lawsuit against Clark Hill following a cyberattack that resulted in his personal data being publicly disseminated. *Guo Wengui*, 338 F.R.D. at 9. During the course of discovery, the plaintiff asked Clark Hill to produce "all reports of its forensic investigation into the cyberattack." *Id.* One such report, the Duff & Phelps Report, was prepared by an external security-consulting firm,[2] which Clark Hill claimed was covered by the work product privilege. *Id.* Clark Hill objected to the production of the Duff & Phelps Report, arguing that, *inter alia*, it was entitled to work product protection because it was created "for the sole purpose of assisting [Clark Hill's counsel] in gathering information necessary to render timely legal advice." *Id.* at 11.

The court disagreed, reasoning that "[f]or many organizations . . . 'discovering how [a cyber] breach occurred [is] a necessary business function regardless of litigation or regulatory

---

[2] It is important to note that this external security-consulting firm was retained by Clark Hill's outside litigation counsel, not by Clark Hill, and the district court still found that the Duff & Phelps Report was not entitled to work product protection. *See Guo Wengui*, 338 F.R.D. at 9.

4

inquiries. [There is a] need[] to conduct an investigation . . . in order to figure out the problem that allowed the breach to occur so that [the organization] [can] solve that problem and ensure such a breach [cannot] happen again.'" *Id.* at 10–11 (quoting *Dominion Dental*, 429 F. Supp. at 193). Thus, based upon the court's *in camera* review of the Duff & Phelps Report, the court concluded that the Duff & Phelps Report would have been prepared and procured by Clark Hill irrespective of the prospect of litigation, as part of the ordinary course of its business. *Id.* at 11.

Similarly, both the Root Cause Analysis Report and the Third-Party Expert Report, which were prepared and procured shortly after the incident alleged in Plaintiffs' Complaint—and long before the threat of litigation emanated—would have been prepared irrespective of this litigation because ARS had a substantial need to ascertain the cause of the alleged incident to "prevent future reoccurrence." *See* **Exhibit C** at 6. The clear and explicitly stated "driving force" behind the preparation of the Root Cause Analysis Report was to ascertain the root cause of the alleged incident to "prevent future reoccurrence." Likewise, the only reason the Third-Party Expert Report was procured is because ARS could not identify "a root cause with available information," which ARS described as "inconclusive." *Id.* at 28. As ARS explained, "[i]n response to the inconclusive results of [its] investigation, third party assistance with the proper credentials and expertise [was] requested to conduct further investigation of the [bucket truck's] operational safety and reliability." *Id.*

Indeed, the threat of litigation is nowhere to be found in the record as a "driving force" behind the Root Cause Analysis Report or the Third-Party Expert Report's preparation. ARS does not, and cannot, direct this Court to any support in the record for the proposition that the threat of litigation was contemplated as a reason for the preparation and procurement of these reports. Rather, it suggests that "the nature of [these] reports, examined in conjunction with the peculiar

5

facts of this action, establish that they are privileged work products." ECF No. 128 at 9.  In this regard, ARS claims that the explicit purpose stated in the Root Cause Analysis Report "is not an exhaustive statement of purpose," and that ARS "cannot be faulted for not explicitly stating every reason for why ARS needed 'relevant information.'" *Id.* at 10.  This argument misses the mark, though, because although the Root Cause Analysis Report and the Third-Party Expert Report may *now* serve a litigation purpose and may have assisted counsel in the formulation of their mental impressions, nothing in the record supports ARS's contention that litigation was the "driving force" behind the reports' preparation at the time they were created.

Likewise, ARS's contention that the "formal" character of the reports and the "detailed analyses" set forth therein render them work product is unpersuasive.  There is little doubt that a "one to two page incident report" would be wholly insufficient to adequately assess the particular factors that caused the incident alleged in Plaintiffs' Complaint to occur.  Thus, it makes perfect sense that the Root Cause Analysis Report and the Third-Party Expert Report are comprehensive and detailed in nature because, otherwise, ARS would not have been able to formulate an adequate course of action to prevent events like the incident alleged here from occurring ever again.  The fact that the factual causation analyses set forth in these reports are relevant to gauging liability exposure does not categorically preclude their discoverability.

Simply put, the Root Cause Analysis Report and the Third-Party Expert Report would have been prepared for ARS irrespective of the threat of any impending litigation.  The record demonstrates that, above all else, the driving force behind the reports' preparation was ARS's desire to "prevent future reoccurrence."  This business-related purpose extensively permeates the reports, and no litigation-related purpose can be gleaned from them.  Accordingly, this Court should compel ARS to produce complete, unredacted versions of the Root Cause Analysis Report

and the Third-Party Expert Report, including any notes, supporting measurements, and data collected by ARS to support them.

As a final aside, ARS contends, citing no authority whatsoever, that Defendants have waived an *in camera* review of complete, unredacted versions of the Root Cause Analysis Report and the Third-Party Expert Report. *See* ECF No. 128 at 12. A district court has discretion to conduct an *in camera* review of any documents claimed to be privileged, so long as the opposing party advances "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011). Defendants have certainly advanced a factual basis sufficient to support a reasonable, good faith belief that an *in camera* inspection of the Root Cause Analysis Report and the Third-Party Expert Report could reveal that the "driving force" behind their preparation and procurement was the prevention of reoccurrence, not the threat of impending litigation. Should this Court need any further support that the Root Cause Analysis Report and the Third-Party Expert Report are not entitled to work product protection, Defendants request this Court to conduct an *in camera* review of complete, unredacted versions of the reports.

## CONCLUSION

The "driving force" behind the creation of the Root Cause Analysis Report and the Third-Party Expert Report was, as explicitly stated in the Root Cause Analysis Report, "*to prevent future reoccurrence.*" It was not, as ARS now contends, to assist in the formation of its counsels' mental impressions and the development of its legal strategy. ARS did not create the Root Cause Analysis Report and procure the Third-Party Expert Report "because of" this litigation or the threat of impending litigation. While these reports, and the factual causation analysis set forth therein, may *now* be integral to counsels' mental impressions, the primary, "driving force" purpose behind their

7

creation was to prevent this alleged incident from ever happening again. Therefore, the work product doctrine does not shield the Root Cause Analysis Report and the Third-Party Expert Report from discovery. For all of the reasons explained above and set forth in Defendants' Motion to Compel, this Court should compel ARS to produce complete, unredacted versions of the Root Cause Analysis Report and the Third-Party Expert Report, together with any notes, measurements, and other data collected by ARS as part of its investigation of the incident alleged in Plaintiffs' Complaint.

DATED the 18th day of April 2023.

**DEFENDANTS**
**By Counsel**

*/s/ Joseph L. Caltrider*
**Joseph L. Caltrider WVSB #6870**
**BOWLES RICE LLP**
**101 South Queen Street**
**Post Office Drawer 1419**
**Martinsburg, West Virginia 25414-1419**
**(304) 264-4214**
**jcaltrider@bowlesrice.com**

**Robert H. Hood, Jr.**
**Hood Law Firm, LLC**
**172 Meeting Street**
**Charleston, South Carolina 29401**
**(843) 577-4435**
**bobbyjr.hood@hoodlaw.com**
*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I certify that I served the foregoing DEFENDANTS' REPLY TO ALL RELIABLE SERVICES' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL upon the following counsel of record using the CM/ECF system on the **18th day of April 2023**:

**Mark Jenkinson, Esq.**
**Burke Schultz Harman & Jenkinson**
**Post Office Box 1938**
**Martinsburg, West Virginia  25402**
**Counsel for Plaintiffs**

**Greg Hopper, Esq.**
**Bekman, Marder, Hopper, Malarkey & Perlin**
**1829 Reistertown Road, Ste 200**
**Baltimore, Maryland  21208**
**Counsel for Plaintiffs**

**Joshua T. Carback, Esq.**
**Franklin & Prokopik, P.C.**
**2 North Charles St., Suite 600,**
**Baltimore, MD 21201**
**Counsel for All Reliable Services, Inc. &**
**All Railroad Services Corporation**

                                               */s/ Joseph L. Caltrider*
                                               Joseph L. Caltrider WVSB #6870